274 So.2d 519 (1973)
STATE of Florida, Petitioner,
v.
Crispitano OYARZO Oyarzo, Respondent.
No. 42087.
Supreme Court of Florida.
February 21, 1973.
Rehearing Denied April 4, 1973.
Robert L. Shevin, Atty. Gen. and Charles Corces, Jr., Asst. Atty. Gen., for petitioner.
W. Daniel Kearney, Asst. Public Defender, for respondent.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Second District, reported at 257 So.2d 108. The decision sought to be reviewed conflicts with Rhome v. State,[1] giving this Court jurisdiction under § 4, Article V of the Florida Constitution, F.S.A.
Defendant, respondent herein, was arrested in Tampa and charged in two counts with possession and sale of cocaine. The *520 chain of events which led to defendant's arrest was initiated in Mexico by undercover agents of the Bureau of Narcotics and Dangerous Drugs. Defendant then brought the cocaine to Tampa aboard a Chilean vessel. After the vessel docked in Tampa, agents Sedillo and Gonzalez met defendant on the dock and again discussed the sale. He offered to sell the cocaine for $28,500.00 but later, when the agents returned to make the purchase, defendant told them that the cocaine had already been sold to another purchaser.
Defendant was arrested and advised of his rights in Spanish. All of the transactions between him and the agents were in Spanish and his Miranda warnings were read to him from a card printed in Spanish. The District Court of Appeal found, however, that despite the fact that he was given his Miranda warnings, that he had been misled by certain statements made by the agents to him and that this required reversal of the conviction. In its opinion the District Court stated:[2]
"Ordinarily, this reading [of Miranda warnings] in Spanish would suffice. However, the record in this case shows that appellant may have been misled as to his actual situation. Agent Sedillo testified as follows:
`Q What transpired the first thirty minutes?
`A The first thirty minutes, we had a problem obtaining a key to the vehicle in which we were. There was quite a bit of confusion down at the terminal in getting this man to the U.S. Customs Office. And most of the time during that period, observing that the defendant was in fear, I explained to him that he had nothing to fear, that we would protect him, that we would take care of him, and I would. And I explained to him our system under American laws as far as his rights, being a foreigner.
`Q He was in fear? He looked at you as his protector at that time, sir?
`A That is correct, sir. After I finished explaining it.' (Emphasis theirs)
"Oyarzo was advised of his rights by Agent Sedillo, who had previously been his friend and associate. The agent advised the accused of his rights, and then shortly thereafter told him there was nothing to fear. This was compliance with the form, but not the spirit, of the Miranda decision. Even though Oyarzo was correctly informed of his rights, it would not be unreasonable under the circumstances for him to think that he could make any statement without fear of the consequences. A statement should be excluded if the attending circumstances are calculated to delude the accused as to his true position or to exert improper or undue influence over his mind."
The record shows that defendant was first advised of his rights within thirty minutes after the arrest at approximately 12:15 a.m. He was then taken to the U.S. Customs Office at 1:15 a.m. and at approximately 3:00 a.m., was again advised of his rights and signed a waiver. The interrogation at the U.S. Customs Office which resulted in the signed statement admitted into evidence, occurred after defendant had been advised the second time of his rights and had signed a waiver. Even if the first Miranda warning was rendered ineffective by the statements of agent Sedillo made at the time of defendant's arrest, the second warning, given more than two hours later, and prior to his giving and signing the statement in question, was effective to advise him of his rights.
In Rhome v. State, supra, the defendant made two sets of statements incriminating him in the crime of rape. The first set of statements was made to the police detective *521 who first investigated the crime. That detective stated to the defendant that if the defendant would cooperate and try to help the detective find certain equipment or property that was purportedly taken from the victim, it would probably help the defendant. The second set of incriminating statements were made by the defendant at the police station after being interrogated by another police officer, who proceeded in a proper manner and informed the defendant of his rights. The trial court excluded all statements given to the first officer but admitted into evidence all statements and confessions given to the second officer. On appeal, defendant contended that the initial promise to help him, made prior to the first set of statements, served to taint all subsequent statements and confessions. The District Court rejected that contention citing this Court's opinion in State v. Outten.[3]
We recognize that in cases such as the one before us here, questions arise as to (1) whether coercive influences actually exist in the first instance, (2) whether those influences have abated, or persist, up to the time of the statement being given and (3) whether such influences as have persisted did, in fact, render the statement involuntary. These questions are mixed questions of fact and law to be determined initially by the trial court in ruling on admissibility of the statement and ultimately by the jury.[4]
In the instant case, the trial court heard the evidence bearing on the voluntariness of defendant's statement and ruled the statement admissible. The statements, along with the circumstances surrounding it, were then introduced into evidence for consideration by the jury. During the trial, agent Sedillo's friendship with the defendant was clearly brought out. Defense counsel referred on a number of occasions to Sedillo's status as defendant's "protector." These matters and their possible bearing on defendant's giving of the incriminating statements were thus presented to, and considered by, the jury. The trial court and the jury were entitled to find, on the evidence presented, that one statement by a law enforcement agent expressing friendship for the defendant, was not sufficient to render involuntary defendant's incriminating statements given after proper Miranda warnings.
Accordingly, certiorari is granted, the decision of the District Court is quashed and the cause remanded with directions to reinstate the verdict of the jury and the judgment of the trial court entered thereon.
It is so ordered.
CARLTON, C.J., and ROBERTS, ERVIN, ADKINS, McCAIN and DEKLE, JJ., concur.
NOTES
[1] 222 So.2d 431 (Fla.App.3d 1969).
[2] Oyarzo v. State, 257 So.2d 108, 109 (Fla.App.2d 1972).
[3] 206 So.2d 392 (Fla. 1968).
[4] Paramore v. State, 229 So.2d 855, 858 (Fla. 1969): "A confession of guilt freely and voluntarily made is not rendered inadmissible because it appears to be induced by deception practiced by the officers, Denmark v. State, 95 Fla. 757, 116 So. 757 (1928), or by the accused being told it would be easier on him if he told the truth, Ebert v. State, 140 So.2d 63 (Fla.App.2d Dist. 1962), or by an officer's statement that only by confessing could the defendant escape the death penalty. Milton v. Cochran, 147 So.2d 137 (Fla. 1962). In the case sub judice there was no misrepresentation and the appellant was adequately warned as to his constitutional rights. The voluntariness of the confession was a mixed question of fact and law which was decided first by the trial judge and then by the jury based on the evidence adduced."

Smith v. State, 135 Fla. 835, 838, 186 So. 203, 206 (Fla. 1939): "* * * While the circumstances which constitute improper influences, such as will exclude confessions, create questions of law which may be reviewed by an appellate court, the credibility of the testimony to prove the circumstances, including conflicting testimony, is primarily, a question for the trial court, and not reviewable by an appellate court unless the court below has transcended its discretion and a wrong may have been done thereby."