275 So.2d 61 (1973)
David JETMORE, Appellant,
v.
STATE of Florida, Appellee.
No. 71-705.
District Court of Appeal of Florida, Fourth District.
March 16, 1973.
*62 Charles W. Musgrove, Public Defender, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Nelson E. Bailey, Asst. Atty. Gen. West Palm Beach, for appellee.
REED, Chief Judge.
The issue on this appeal is whether or not the trial court properly denied a pretrial motion to suppress a written confession given by the defendant.
The defendant, David Jetmore, was charged by an information filed in the Circuit Court for Osceola County, Florida, with breaking and entering a building on 15 April 1971 with the intent to commit a misdemeanor. About one month after Jetmore was arrested the public defender on behalf of Jetmore filed a motion to suppress certain tangible items of evidence and the written confession. The items of tangible evidence were obtained by a police search of Jetmore's automobile trunk at the time of his arrest.
A hearing was held on these motions on 18 June 1971 at which time the arresting officer, Jetmore, and several other persons testified. At the conclusion of the hearing, the trial judge reserved ruling. He later denied the motion to suppress the confession and granted the motion to suppress the items of tangible evidence.[1]
After the hearing on the motions to suppress, Jetmore was arraigned on 1 July 1971. At arraignment, Jetmore, represented by the public defender, pleaded nolo contendere to the lesser included offense of attempted breaking and entering with intent to commit a misdemeanor. This plea was made in accordance with the rules announced by the Florida Supreme Court in State v. Ashby, Fla. 1971, 245 So.2d 225, and reserved the right to appeal the ruling of the trial judge on the motion to suppress the confession. Following the plea of nolo contendere the defendant was sentenced on 3 August 1971 to two and one-half years imprisonment, and this appeal followed.
The pertinent evidence taken most favorably to the trial court's order on the motion to suppress indicates that at about 1:00 a.m. on 15 April 1971 a Mr. William Bouton was driving through the middle of the City of St. Cloud when he noticed a broken window at the Handy Food Store on 13th Street. Mr. Bouton drove up a side street by the store and saw a white Chrysler with the trunk lid open and no lights on. As he drove around the corner he saw a man coming out through the broken window pulling a grocery cart. Thereupon Mr. Bouton called his wife on a telephone which was installed in his automobile. He directed her to call the St. Cloud Police Department.
As a result of Mr. Bouton's alert response to the situation, a dispatcher with the St. Cloud Police Department radioed Patrolman Robert Anderson who was *63 cruising in the area of the Handy Food Store. Officer Anderson was told to proceed to the area of the store because a breaking and entering was in progress at the store and to secure the area around the city limits in the area of the store. Almost immediately after Anderson received this call he saw a vehicle traveling at a high rate of speed toward the city limits. He stopped the vehicle which contained the defendant. Officer Anderson told Jetmore that he was investigating a breaking and entering which had occurred at the Handy Food Store. Jetmore appeared to be nervous and made an intriguing response to the effect that Officer Anderson was picking on Jetmore because he (Jetmore) was an "ex-con." Officer Anderson observed on or about the front seat of Jetmore's car a transistor radio tuned to a police band and several innocuous items. The officer told Jetmore to get out of the automobile and place his hands on its roof. As Jetmore did this, he was observed by Officer Anderson to attempt to hide under his palm a key to the trunk of the vehicle. Officer Anderson asked Jetmore if he would permit a search of the trunk, but he refused. Nevertheless at the scene of the detention the officer took the key and opened the trunk and revealed the groceries which had been stolen from the food store. Jetmore was then arrested and taken to the police station in St. Cloud where he was advised in detail of his Miranda rights. He personally testified that he understood the rights advisory, having been given one on a prior occasion. Thereafter Jetmore signed a confession because, according to him, he had come to the conclusion that the police had sufficient evidence to convict him anyway.
The appellant's contention here is that his arrest and the subsequent search of his vehicle were illegal under the fourth amendment to the United States Constitution.[2] As a result the tangible objects gained through the search were inadmissible and rendered inadmissible the confession which, so says the appellant, resulted from the unlawful seizure of the tangible items of evidence. For support the appellant relies on Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. In Wong Sun there were two petitioners, Wong Sun and James Wah Toy. Both were convicted in a federal district court for possession and transportation of heroin. The evidence in this somewhat puzzling case (referred to by the dissent therein as a Chinese puzzle) indicates that federal narcotics agents arrested one Homway and found him in possession of heroin. Homway advised the arresting agents that he had bought the heroin from "Blackie" Toy, a laundry proprietor. Shortly thereafter the federal agents broke into Toy's place of business and arrested him, but found no heroin on his person or within his premises, although a search for the same was conducted. Toy told the agents that one Johnny Yee had possession of heroin and directed the agents to Johnny's house. The agents searched Johnny Yee's house and found that Johnny was in possession of one ounce of heroin, which he told the agents he had bought from Wong Sun. The agents then went to Wong Sun's house, arrested him, and searched his home but found nothing. All arrests and searches were made without warrants. Within several days after the arrest Wong Sun and James Wah Toy voluntarily submitted to police interrogation and made certain incriminating admissions. One of the issues presented by Wong Sun was whether or not the trial court had properly ruled admissible Wong Sun's pretrial inculpatory statement to the police. As to Wong Sun, the Supreme Court held that his arrest was *64 illegal, but that his post-arrest statement was not sufficiently related to the illegal arrest that it should be excluded from evidence. The court pointed out that the statement was voluntarily given several days after the arrest and a lawful arraignment. For purposes of our decision in the present case the following language from Wong Sun is pertinent:
(page 417)
"... We need not hold that all evidence is `fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is `whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' .. ."
* * * * * *
(page 419)
"... For Wong Sun's unsigned confession was not the fruit of that arrest, and was therefore properly admitted at trial. On the evidence that Wong Sun had been released on his own recognizance after a lawful arraignment, and had returned voluntarily several days later to make the statement, we hold that the connection between the arrest and the statement had `become so attenuated as to dissipate the taint.' . .."
On the assumption that the arrest of the appellant and the subsequent search and seizure were illegal, we take the same view with respect to his confession as did the Supreme Court with respect to Wong Sun's oral statement. The present statement, although given only forty-five minutes after the arrest, was quite obviously given freely and voluntarily and after a full and complete Miranda warning which the defendant expressly stated he understood. Thus it seems to us that the trial court had a factual basis before it from which it could reasonably have found that defendant's statement was the result of a voluntary exercise of free will and independent of the illegal search and seizure. We, therefore, uphold the trial court on that ground. See Reynolds v. State, Fla. App. 1969, 222 So.2d 246. See also State v. Oyarzo, Fla., 274 So.2d 519, opinion filed 2-21-73.
There is an alternative basis for affirmance even though it rests on a theory not adopted by the trial court. It is well settled that a person may be detained by an investigating police officer on something less than probable cause, where there exists a reasonable ground for detaining the citizen to make inquiry of him. See Gustafson v. State, Fla.App. 1971, 243 So.2d 615, 619; State v. Gustafson, Fla. 1972, 258 So.2d 1, and State v. Padilla, Fla.App. 1970, 235 So.2d 309. The first stage of the police conduct with respect to Jetmore, i.e., the initial stopping, could be considered as a legal detention inasmuch as a reasonable ground for stopping Jetmore could be found in the dispatcher's report to Officer Anderson, the late hour, and the high speed driving of the defendant in the direction of the city limits.
After the officer stopped Jetmore and told him about the breaking and entering, the officer observed a display of nervousness on the part of Jetmore and heard Jetmore's spontaneous response which could have done nothing but arouse the curiosity of a reasonable man. Additionally, when Jetmore was ordered out of the vehicle the officer observed Jetmore's attempted concealment of the key to the automobile trunk. While the totality of the information in the officer's possession at this time might not have been sufficient to equate with the "probable cause" necessary to search a residence or a business premises, it quite reasonably could be considered to have constituted probable cause for a search of the vehicle for stolen goods. Hence the roadside search of Jetmore's vehicle without a warrant could be considered *65 to accord with Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 419; and Section 933.19, Florida Statutes 1971, F.S.A. Assuming that this conclusion is correct, it would follow that the items of tangible evidence were properly seized and, therefore, could not be considered to be an illegal inducement to the confession which the trial judge refused to suppress.
On both of the grounds aforementioned, we hold that the ruling of the trial court on the motion to suppress was proper. The judgment and sentence are affirmed.
Affirmed.
MAGER, J., concurs.
WALDEN, J., dissents, with opinion.
WALDEN, Judge (dissenting):
I respectfully dissent because of my strong persuasion that the written confession was directly and exactly the product of the illegal search and seizure  the sure fruit of the poisoned tree.
Shortly after midnight on April 15, 1971, a Handy Food Store in St. Cloud was broken into and food stolen from it. Officer Anderson was on his way to the site when he observed two cars speeding. He stopped defendant and informed him that he was under arrest for careless driving. The officer was first made aware that there had been a breaking and entering only "a few seconds" before he observed defendant speeding. He testified as follows at the hearing on defendant's motions to suppress regarding the subsequent search of defendant's auto trunk:
Q "Did you have the occasion to search his vehicle at that place and time?
A "Yes, I did.
Q "Would you tell us why and what you did?
A "I placed Mr. Jetmore under arrest for careless driving at the time, because he was very suspicious and very nervous when I told him I was stopping and checking for breaking and entering. I advised him of his constitutional rights and then I asked Mr. Jetmore if he would open up his trunk. No. He said no. He knew his rights. I would have to have a warrant. I told him that this could be obtained.
"I then placed him under arrest for careless driving."
* * * * * *
Q "Why did you stop the defendant's car?
A "Because of his driving. As I radioed in for a checkout of the vehicle ahead, this gentleman whipped across the highway and went down Neptune Road. I was suspicious.
Q "He was arrested for what?
A "Careless driving.
Q "In connection with that arrest, was he searched?
A "Yes. He was. I search everybody when I put them in the car.
Q "He never was arrested for breaking and entering until after he got back to the police station, is that right?
A "He was placed under arrest and advised again of his rights at the scene when he gave me permission for opening his trunk.
Q "Under arrest for what?
A "I placed him under arrest afterwards.
Q "You mean after the trunk was opened?
A "Yes.
Q "In other words, he was not arrested for breaking and entering until after his trunk had been opened, is that correct?

*66 A "... He was not placed under arrest until afterwards."
After the groceries were discovered in defendant's trunk, he and the police went back to the scene of the crime and from there to the police station where he subsequently made the confession, some 30 to 45 minutes later. Defendant was advised of his rights beforehand and understood them. Defendant testified as follows:
Q "What happened at the police station?
A "They kept asking me if I would make a confession and the one in plain clothes, one man in plain clothes, he told me that I might as well make a statement, they had the evidence on me, that there wouldn't be no need for me to hold out, now, they would convict me no matter what.

Q "Did you eventually make a statement?
A "Yes, sir I did.
* * * * * *
Q "Why did you make the statement?
A "Well, I come to the conclusion where they kept saying they had the evidence whether they made one or whether I made one or not, they still would convict me. I finally gave up." (Emphasis supplied.)
Defendant moved to suppress the tangible evidence (groceries) and the confession. The tangible evidence was properly suppressed. The confession was erroneously admitted.
It cannot be disputed that the search was unlawful. See Ackles v. State, Fla.App. 1972, 270 So.2d 39. The officer searched the defendant's automobile trunk against defendant's will prior to his arrest for breaking and entering, based merely upon the officer's observation of the defendant's improper operation of the vehicle and his nervous demeanor. Thus, the trial court correctly deemed the search illegal and suppressed the tangible evidence gained thereby.
It is interesting that the state accepted that decision and did not cross assign as error or otherwise raise the matter on appeal. Thus, I suppose that we are in no proper position to challenge, or change, or contort it in some kind of effort to support the appealed trial court decision regarding the use of the confession.
The second colloquy above reveals that defendant was induced to confess by the illegally seized evidence. Where a confession is induced by illegally seized evidence it is subject to exclusion as "fruit of the poisonous tree." See Fahy v. Connecticut, (1963) 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171; Wong Sun v. United States, (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; French v. State, Fla.App. 1967, 198 So.2d 668; Betancourt v. State, Fla.App. 1969, 224 So.2d 378; People v. Johnson, (Cal. 1969) 70 Cal.2d 541, 75 Cal. Rptr. 401, 450 P.2d 865; People v. Bilderbach, 62 Cal.2d 757, 44 Cal. Rptr. 313, 401 P.2d 921; Annot., 43 A.L.R.3d 385, § 11 (1972).
Defendant here relies on Wong Sun v. U.S., supra. In Wong Sun v. U.S., the Supreme Court discussed the admissibility of confession statements made by the two defendants. There Wong Sun and James Wah Toy were convicted in a federal district court for possession and transportation of heroin. Narcotics agents arrested Homway and found him in possession of heroin. He advised the agents that he had bought the heroin from "Blackie" Toy, a proprietor of a laundry. On the same day and shortly thereafter the federal agents broke into Toy's place of business (which was also his residence) and arrested him, but found no heroin on his person or in his premises. Toy told the agents that one "Johnny" Yee had possession of heroin and directed the agents to Johnny's house. The agents searched Johnny's house and found that Johnny Yee was in possession of one ounce of heroin. Yee told the federal agents that he bought his heroin from Wong Sun. The agents then went to *67 Wong Sun's house, arrested him, and searched his home but found nothing. All arrests and searches were made without warrants. Within several days after Wong Sun and James Wah Toy were arrested and freed on bond they voluntarily submitted to interrogation, after having been given a rights advisory, and made certain incriminating oral admissions.
The issue before the Supreme Court was whether or not the trial court had properly ruled admissible: (1) oral statements by Toy in his bedroom at the time of his arrest; (2) the heroin surrendered by Johnny Yee; (3) Toy's pretrial unsigned statement; and (4) Wong Sun's similar statement. The Supreme Court held as to Toy: (1) the arrest was illegal and not based on probable cause or supported by a warrant; (2) Toy's declarations in his bedroom were produced by the unlawful arrest and were therefore subject to the exclusionary rule and rejected the contention that the bedroom statements were the results of an exercise of free will; and (3) the narcotics seized from Johnny Yee were gotten at by reason of one of the bedroom statements of Toy and were inadmissible for that reason. The court made no ruling as to Toy's post-arrest statement. As to Wong Sun, the court held that his arrest was likewise illegal, but that his post-arrest statement was not sufficiently related to his illegal arrest that it should be excluded from evidence. The court pointed out that the statement was voluntarily given several days after the arrest and was made after a lawful arraignment:
"... the more apt question in such a case is `whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' .. .
......
"... For Wong Sun's unsigned confession was not the fruit of that arrest, and was therefore properly admitted at trial. On the evidence that Wong Sun had been released on his own recognizance after a lawful arraignment, and had returned voluntarily several days later to make the statement, we hold that the connection between the arrest and the statement had `become so attenuated as to dissipate the taint.' . .."
Fahy v. Conn, supra, is helpful here, although not directly on point. There, defendant was convicted of painting swastikas on a synagogue. The Supreme Court held that the erroneous admission into evidence of a paint brush and can of paint obtained by an illegal search and seizure was prejudicial error as it precluded defendant from asserting that the admissions and confession were induced by the illegally seized evidence.
French v. State, supra, is the Florida case most directly on point; the only distinguishing feature is that in French v. State there is no indication that defendants were given their Miranda rights, whereas here defendant was. There defendants confessed to breaking and entering when confronted with illegally seized evidence. As here, the tangible evidence was suppressed, but the confession admitted. Their convictions were reversed:
"Under the circumstances, it appears that we are compelled to reverse these convictions. Once the trial court found that the tangible evidence, obtained as a result of an illegal search and seizure, could not be introduced into evidence it should have precluded the introduction into evidence of the oral and written confessions of the appellants, which were obtained after the police official confronted them with the tangible evidence which had been illegally seized. Evidence obtained as a result of an unreasonable search and seizure is inadmissible against one who has standing to complain... . Evidence which is located by the police as a result of information and leads obtained from illegally *68 seized evidence, constitutes `the fruit of the poisonous tree' and is equally inadmissible in evidence... . Statements made by a defendant when confronted by the police with the fruits of an illegal search constitute `the fruit of a poisonous tree' and are inadmissible in evidence. ... The trial court having concluded that the discovery of the tangible evidence was as a result of an unlawful search, the introduction into evidence of the oral and written confessions [which were forthcoming from the defendant within a very short time of the unlawful search and seizure of the tangible evidence] should have been precluded. See: Outten v. State, Fla.App. 1967, 197 So.2d 594." 198 So.2d 668 at 669.
Betancourt v. State, supra, relied on French v. State, supra, in reversing defendant's conviction for possession of marijuana. There defendant's statement that he had left a package (discovered to be marijuana) in a cab was held inadmissible because the admission resulted from defendant's illegal arrest for possession of marijuana found at a friend's apartment. Without defendant's admission there would have been no link between him and the marijuana discovered in the taxi.
People v. Johnson, supra, is directly on point and exactly fits our fact situation. There defendant confessed after being confronted with a codefendant's confession which was the product of an unlawful search and seizure. Defendant's confession was held inadmissible despite the fact that it was made after he was given the Miranda warnings. The California Supreme Court commented as follows regarding the Miranda warnings:
"The Miranda warnings given to Howard and Johnson are not sufficient to show that the primary taint has been purged. The Miranda warnings advise a defendant of his rights to remain silent and to counsel. They do not advise him whether the evidence he is confronted with is unlawfully obtained or whether it will be admissible at trial. (Emphasis supplied.)
"There is little, if any reason, to assume that the Miranda warning neutralizes the inducement to confess furnished by the confrontation of the defendant with the illegally obtained evidence which shows his guilt and the futility of remaining silent. If Miranda warnings were held to insulate from the exclusionary rule confessions induced by unlawfully obtained evidence, the police would be encouraged to make illegal searches in the hope of obtaining confessions after Miranda warnings even though the actual evidence seized might later be found inadmissible. .. . To so hold would result in the Miranda warning  intended to protect the defendant's rights to counsel and to remain silent ... and to prevent exploitive police practice ...  becoming the instrument of a bootstrap operation to insulate unlawful police activities from the effects of the exclusionary rule.
"We cannot subscribe to such a suggestion. We recognize, of course, that Miranda did not purport to eliminate the use of confessions `given freely and voluntarily without any compelling influences.' ... We recognize, too, that the taint of illegal action in this contest can be dissipated by an intervening act of defendant's free will ... and that the Miranda warning may be a factor to be considered with other evidence indicating that the defendant has acted independently of the unlawful inducement. However, the shield of Miranda should not become a sword to vitiate the keystone of the rule excluding illegally obtained evidence, namely, that `the prosecutor may not profit directly or indirectly from an illegal search.' ... Accordingly, although the Miranda warning may be a factor in determining whether there is an intervening act of free will, it does not in isolation demonstrate the requisite attenuation." 450 P.2d 865, at 870-871.
*69 Here the conclusion is inescapable that defendant's confession was the product of the illegal search and seizure. (This is further evidenced by defendant's comments to that effect.) This is not a case like Wong Sun, where defendant, after arraignment, freely went down to police headquarters some time after the illegal arrest and freely confessed. There the circumstances were so "attenuated that the taint was removed." That is not at all the situation here where defendant was in custody and some thirty to forty-five minutes after interrogation had begun confessed to the crime. These circumstances were definitely not so "attenuated as to have removed the primary taint."
For these reasons I would reverse the judgment and remand for a new trial but with instructions to suppress the confession.
NOTES
[1] There is a procedural problem posed by this record. The trial court never formalized its ruling on the motions to suppress by the entry of a formal written order. The public defender realized this after the notice of appeal was filed and secured from the trial judge an order which reflected the trial judge's disposition of the motions. Unfortunately, this court entered an order striking the trial court's nunc pro tunc order pursuant to a motion by the attorney general. We did so on the theory that the trial judge had no authority to enter such an order after the notice of appeal was filed. On reflection, we have decided that the nunc pro tunc order of the trial judge should be allowed to stand as a part of the record on appeal as an order correcting or completing the record under Rule 6.9(d), F.A.R., 32 F.S.A.
[2] Amendment IV. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."