386 So.2d 232 (1980)
Patrick Anthony BREWER, Appellant,
v.
STATE of Florida, Appellee.
No. 54578.
Supreme Court of Florida.
May 22, 1980.
Rehearing Denied July 30, 1980.
*233 Margaret Good, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This is an appeal from a judgment of the Circuit Court of the Fourth Judicial Circuit, in and for Clay County, in which the court adjudicated the appellant guilty of murder in the first degree and followed the jury recommendation in sentencing him to death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
On February 15, 1978, at approximately 7:30 A.M., the body of Mrs. Tsuyako Thomas was discovered on the floor behind the counter in her restaurant. She had been stabbed to death. A knife later identified as belonging to the appellant was found underneath the body. The appellant's cap was also found at the scene. Shoe track impressions taken from an area to the rear of the restaurant showed similarity to the appellant's boots. Traces of blood found on the appellant's boots were of the same blood type as the victim.
On February 18, 1978, police officers arrested the appellant. They advised him of his rights in the standard fashion. The appellant told them that he was present at and witnessed the stabbing and that he knew the attacker but only by first name. He said that he struggled with the assailant briefly, then fled the scene in fear.
After further interrogation, the appellant made statements of an incriminating nature. The interrogation and the statements were tape-recorded. Later that day he was taken before a county court judge for first appearance. The judge advised the appellant of his rights to remain silent and to have an attorney present during questioning. Subsequent to the appearance before the judge, the appellant signed a written confession.
Before trial, the appellant moved to suppress both his initial oral incriminating statements and his written confession. At a hearing on the motions, the court heard the tape of appellant's interrogation.
THIRD VOICE: What time did you leave? Now someone took you to Bellair in a pickup truck. I know that for sure. I don't know where you went to in Bellair and Allen and I have followed you every footstep from the time you were supposed to be at the Jiffy Store that night and the time you left your trailer until you went to the Jiffy Store, 'til you went to Lou's and back to your trailer, and from your trailer to Bellair, and to the people you talked to in Bellair, and all about it. And, it's looking dim for you, boy. I'm not kidding you.
FIRST VOICE: If you get convicted of first degree murder, now it's the damn electric chair or life. Now that's the way  that's what it amounts to. But, if you  you know, if you committed second degree murder, it's what? Five? What? Twenty? Twenty years to life and you're eligible for parole at five or seven, see? That's second degree. That's what you did. I know that's what you did. That's what you did. Second degree murder. But, if we put all this evidence we got before a jury, you are liable to get convicted of first degree murder. Look, we know you were  you were in the area. We know you went to the restaurant. Your knife was found under that woman. Your knife, that's been identified as your knife, it's even got your name on it. How is a jury 

*234 SECOND VOICE: Engraved on it.
FIRST VOICE: Engraved on it. How is a jury  how is a jury going  now, you think of 12 people that don't know a damn thing about the law sitting back there listening to this, see? They don't know as much about the law as me or Alred or maybe not as much as you; but, they are sitting there listening. All right. Here  here he was. His knife was under the woman. We've got your boots that's got blood all over them. All over them. Even where they were polished. We are going to present that to the jury. We are going to let them look at it. We've got casts, photographs of where your heel impression went into the dirt. We know they're your boots; they've been identified as your boots, right?
SECOND VOICE: Yes, sir.
FIRST VOICE: Not the ones you were wearing when you were in here, when you were brought in here this afternoon. We are talking about some other boots. You know what I'm talking about, don't you?
SECOND VOICE: Yes, sir.
FIRST VOICE: Those are your boots, aren't they?
SECOND VOICE: Yes, sir.
FIRST VOICE: You were wearing them that night, weren't you?
SECOND VOICE: Yes, sir.
FIRST VOICE: And why did you lie to us and tell us that you had them others on? It ain't going to do you any good to lie, Pat. If you done it, tell us, and tell us right now, and we'll help you out on this thing. They are going to come to us and they are going to say, "Did you cooperate?" We are going to say, "yes, he did. He's sorry for what he done. We believe he can be rehabilitated." That's what we will tell the parole people when the [sic] come to us. If you hang back and try to lie to us, we are going to say, "yes, he lied to us. He hasn't admitted it. We had to go to a jury trial. The jury found him guilty. They sent him away for life." And that's the way it will be. You will be there the rest of your damn life. Hell, tell us about it. We put a guy in jail, just like you, just about the same age, for the same thing not one month ago. Now, he was on drugs too. Hell, you're sorry for what you've done. I know you are. Tell us about it. Get it off your conscience. We'll help you out. I'm serious. Won't we, Alred? I tell you, a damn jury is going to convict you, Pat. We got all kinds of evidence on you. Even if what you told us is true, a jury will still convict you of first degree murder. You've got 12 people sitting back there and they've read about all this stuff in the papers and, man, these people will just string you by the nape of your neck right now if they get their hands on you. Hell, we know you done it. You know you done it. We can prove it in court. Admit it. Say you're sorry. Try and get off light. That's your only recourse.
SECOND VOICE: Yeah, but that ain't the only thing you can do is say you're sorry.
FIRST VOICE: Why ain't it?
SECOND VOICE: 'Cause that don't bring back someone's life.
FIRST VOICE: You are sorry you done it, though, ain't you?
SECOND VOICE: I ain't saying I done it.
FIRST VOICE: Well, I know you ain't saying you done it; but, see, I know you did it. Alred knows you did it. Jennings Murrhee knows you did it. Isn't that right? Hell, it ain't the worst thing in the world. We do this stuff all the time; this is our business. This is our business. And I guarantee you when we go to court, if we go to a trial on this thing, buddy, they are going to find you guilty. I'll swear they are. They will find you guilty and they will send you away for the rest of your life if they don't put you in the electric chair. Where you go ahead and cooperate and tell us you've done this thing and tell us how you done it, tell us where that billfold is, tell us where the billfold is, we'll help you out on this thing. We'll get  *235 you'll get out of this thing on second degree murder. But we got you. We got you locked up in this thing. And that's the truth. You ain't but 19 years old.
SECOND VOICE: 18.
FIRST VOICE: Eighteen years old. You'll be out on the streets when you're 30, or less than that, but you won't if we go to a trial and you're convicted of first degree murder. You can count on that.
THIRD VOICE: Why don't you just go ahead and straighten up and tell us?
FIRST VOICE: Do you want to tell us about it? Tell us about it. Cooperate with us. We'll help you out. You've known me all your life. You know I ain't no liar and I don't put stuff on people they don't deserve. I'll tell the parole and probation people you cooperated with us. Alred will, too. And I'll get Jennings Murrhee to tell them that you cooperated. We know you done it. Hell, tell us about it and cry about it and pray a little bit about it and you'll be all right.
The officers raised the spectre of the electric chair, suggested that they had the power to effect leniency, and suggested to the appellant that he would not be given a fair trial. It was under the influence of these threats and promises that the appellant made an oral confession. The appellant's motion to suppress his oral statements made before his first appearance was granted.
Following the initial interrogation which lasted about two hours, the appellant had his first appearance before a county court judge. He was in the presence of the judge for approximately fifteen minutes. He was advised of his rights. The judge became aware that the appellant had made a statement but he was not informed of the nature of the statement. The judge was not informed of the threats and promises that produced the statement. He did not inform the appellant that the initial statements could not be used against him.
After first appearance, the appellant went back into the custody of the same officers who performed the initial, tape-recorded interrogation. They told him they wanted a written statement of what he had confessed to them earlier. The appellant wrote out a confession and signed it. The written confession was admitted into evidence over the appellant's objection.
The appellant contends, among other matters, that the trial court committed reversible error in denying his motion to suppress his written confession. He argues that the statement should have been excluded because it was the product of the same clearly established coercive influences that rendered his oral statements inadmissible.
In order for a confession or an incriminating statement of a defendant to be admissible in evidence, it must be shown that the confession or statement was voluntarily made. Coffee v. State, 25 Fla. 501, 6 So. 493 (1889). The due process clause of the Fourteenth Amendment to the United States Constitution prohibits the states from using the coerced confession of an accused against him. Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936). In a state prosecution, the standard by which the voluntariness of a confession is to be determined is the same as that which applies to federal prosecutions under the fifth amendment privilege against self-incrimination. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).
Under that standard, when a question arises as to the voluntariness of a confession, the inquiry is whether the confession was "free and voluntary; that is [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence... ." Bram v. United States, 168 U.S. 532, 542-43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897). For a confession to be admissible as voluntary, it is required
that at the time of the making the confession the mind of the defendant be free to act uninfluenced by either hope or fear. The confession should be excluded if the attending circumstances, or the declarations of those present at the making *236 of the confession, are calculated to delude the prisoner as to his true position, or to exert improper and undue influence over his mind.
Frazier v. State, 107 So.2d 16, 21 (Fla. 1958); Harrison v. State, 152 Fla. 86, 12 So.2d 307 (Fla. 1943).
The appellant's initial statement was coerced and was properly excluded by the trial court. The appellant contends that the written confession should have been suppressed also, on the ground that there were no intervening facts or circumstances sufficient to break the stream of events and insulate the written confession from the coercive influences that produced the earlier statement.
The burden of showing that the appellant's written statement was voluntarily made was on the state. Lawton v. State, 152 Fla. 821, 13 So.2d 211 (Fla. 1943). The state was required to establish voluntariness by a preponderance of the evidence. Wilson v. State, 304 So.2d 119 (Fla. 1974); McDole v. State, 283 So.2d 553 (Fla. 1973).
Once it is established that there were coercive influences attendant upon an initial confession, the coercion is presumed to continue "unless clearly shown to have been removed prior to a subsequent confession." State v. Outten, 206 So.2d 392, 396 (Fla. 1968). The inquiry is whether, under the circumstances, the influence of the coercion that produced the first confession was dissipated so that the second confession was the voluntary act of a free will. See, e.g., Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968); Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1953); United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947); Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1943).
The state contends that the trial court was correct in holding that the intervening appearance before a judicial officer, who gave a rights advisory, was sufficient to dissipate the coercive influences and render the subsequent written confession voluntary.
In Lyons v. Oklahoma, an initial confession was improperly obtained by coercion. A second confession was held to be freely given and admissible. In addition to an intervening warning of constitutional rights, the following circumstances, in contrast to the instant case, were present: twelve hours elapsed from the time of the first statement to the time of the second; the second statement was given in response to questioning by an authority different from the one that exerted the improper influence; and the persons who applied the coercion were not present at the time of the second statement.
The trial court, in the instant case, in holding that the coercion did not affect the voluntariness of the written statement, cited State v. Oyarzo, 274 So.2d 519 (Fla. 1973); State v. Holt, 354 So.2d 888 (Fla. 4th DCA 1978); and Jetmore v. State, 275 So.2d 61 (Fla. 4th DCA 1973).
In State v. Oyarzo, the question was whether a second and proper rights advisory was sufficient to dissipate the improper influence that accompanied the first rights advisory given upon arrest. There was no question of two separate statements. The issue was whether the defendant's statement was unaffected by the improper influence created when the arresting officer pretended to be a friend and protector, deluding the defendant as to his true position. We held that the second warning dissipated the coercive influence so that the statement was admissible. The threats and direct promises of leniency shown to have existed in the present case were much more intense and pervasive than the single comment made in Oyarzo.
In State v. Holt, the suspect being interrogated made an incriminating statement without having received Miranda warnings. He repeated the statement later following proper warnings. The appellate court cited Rhome v. State, 222 So.2d 431 (Fla. 3d DCA 1969), for the rule that:
Where two confessions have been given, the mere fact that the first confession may have been obtained as a result of *237 improper influences does not necessarily make inadmissible a subsequent confession, provided there has been a showing that the improper influences have been removed.
State v. Holt, 354 So.2d at 890. In Holt, the impropriety accompanying the first statement was the omission to advise the suspect of his rights. Thus a proper warning was enough to overcome the impropriety associated with the earlier statement. In the case at bar the impropriety consisted of actual threats, promises of leniency, and statements calculated to delude the appellant as to his true position.
Jetmore v. State, 275 So.2d 61 (Fla. 4th DCA 1973), concerned the question whether the primary taint of an illegal arrest and search rendered inadmissible a subsequent confession made after proper warnings. The statement was held to have been properly admitted on the ground there was sufficient evidence for the conclusion that the confession was voluntary and not affected by the illegality of the arrest and search. The question whether proper warnings have purged the taint of an illegal arrest is different from the question whether actual coercion continues to operate despite warnings.
Upon examining the totality of the circumstances surrounding the confession, we conclude that the intervention of appearance before a judicial officer was not sufficient to break the stream of events and dissipate the coercive influences exerted on the appellant. The trial court erred, therefore, in ruling that the written confession was voluntary. This error requires reversal and a new trial.
The judgment and sentence are vacated. The decision of the court below is reversed and the case remanded for a new trial.
It is so ordered.
ENGLAND, C.J., BOYD, OVERTON, SUNDBERG and ALDERMAN, JJ., and VANN, Associate Justice, concur.
ADKINS, J., dissents.