427 So.2d 283 (1983)
Queen Elizabeth WILEY, Appellant,
v.
STATE of Florida, Appellee.
No. AF-168.
District Court of Appeal of Florida, First District.
February 22, 1983.
*284 Clifford L. Davis, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Gregory C. Smith, Asst. Atty. Gen., for appellee.
MILLS, Judge.
Queen Elizabeth Wiley was indicted for first degree murder by the Leon County Grand Jury on 28 May 1980. After the trial jury returned a guilty verdict on the lesser included offense of aggravated battery, Wiley instituted this appeal, contending that the trial court erred in several respects. We affirm.
Patricia Hill was killed in Tallahassee on 30 July 1977. Her battered corpse was found the following morning in an abandoned lot behind the Ebony Club, a local night spot. The Tallahassee Police Department immediately initiated an intense investigation into the circumstances surrounding the death, and as a result of subsequently developed leads, Queen Elizabeth Wiley became a suspect in the crime.
Authorities learned that Wiley was in Crestview visiting her sister, and on 25 August 1977, Officer Crawley, an investigator with the Tallahassee Police Department, went there to meet with her. Crawley recorded their conversation on tape, and the record shows that while she denied any involvement in the crime, she did admit being at the Ebony Club on the night in question. When Crawley spoke with Wiley again on 9 September 1977, she repudiated her statement of 25 August, but still denied any involvement. Following this last conversation, police were stymied in their efforts to solve the crime. No further developments surfaced for a period of almost two and one-half years.
The next break in the case occurred on 22 February 1980. On that date, Wiley, incarcerated in Broward County on another charge, contacted law enforcement officials and advised them that she wanted to make a statement about the Patricia Hill case. She told authorities that thinking of the case in Tallahassee was causing her to lose sleep at night and that she wanted to remember but that she was having difficulty recalling the details of the events of that evening. At the suggestion of one of the matrons at the Broward County Correctional Institute, Wiley asked authorities to place her under hypnosis in the hope that this technique would help revive her faltering memory.
Pursuant to her request, Wiley was placed under hypnosis on 7 March 1980 by a police officer trained in the art of hypnosis. She gave three statements that day  one prior to the hypnosis session, one while under hypnosis, and one following the hypnosis session. In none of those statements did Wiley say anything tending to incriminate herself other than admitting that she was at the Ebony Club on the night of Patricia Hill's death. This fact was already known to police because of her statement of 25 August 1977.
Thereafter, the Tallahassee police began to receive a series of unsolicited letters from Wiley. The first of these letters was dated 7 May 1980, and in that letter she declared that she would no longer cooperate in the investigation of the case. However, in two other letters dated 8 May and 9 May *285 respectively, she admitted striking the victim repeatedly about the head and upper body with a nail-studded board and with her fists on the night in question. On 10 May 1980, Wiley was brought to the Tallahassee Police Department where she again admitted beating the victim. Other information obtained from Wiley's confession was consistent with evidence found at the scene the morning after the victim's death. Wiley was subsequently charged with first degree murder.
Prior to trial, Wiley filed a motion to suppress all of her letters and statements made subsequent to the hypnosis session of 7 March, contending that they were the product of psychological coercion. Specifically, she maintained that the procedures used in the hypnosis session were so suggestive that her will was overcome, that all statements made while under hypnosis were therefore inadmissible, and that the subsequent confessions were inadmissible because they constituted "fruit of the poisonous tree."
At the suppression hearing, the trial court heard testimony from Wiley's expert, Dr. Charles Madsen, a noted psychologist. Dr. Madsen challenged the procedures used by the police hypnotist in various respects and concluded that they were overly suggestive. While he suggested that the subsequent confessions could have been the result of the hypnotist's procedures, he admitted on cross-examination that this suggestion was only a possibility and that the hypnosis may have had nothing whatsoever to do with the subsequent confessions. After hearing all of the evidence, the trial court denied Wiley's motion to suppress, finding that the statements were freely and voluntarily made.
When a criminal defendant alleges that inculpatory statements made by him were involuntary, the burden is on the State to prove that they were voluntary. Fex v. State, 386 So.2d 58 (Fla. 2d DCA 1980). The trial court must determine that the statements were voluntary before allowing the jury to hear them. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). However, the trial court need only find by a preponderance of the evidence that they were voluntarily given. Peterson v. State, 382 So.2d 701 (Fla. 1980). In view of the fact that the hypnosis session was conducted at her request, the length of time between the session and the subsequent confessions, and the conflicting testimony given by Dr. Madsen, we are not prepared to say that the trial court erred as a matter of law in finding, by a preponderance of the evidence, that the incriminating statements were freely and voluntarily made.
Citing Rose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), Wiley further contends that the indictment against her should have been dismissed because of racial discrimination in the selection of the grand jury foreman. It was stipulated by counsel that since 1955 there has never been a black grand jury foreman in Leon County and that the black population in Leon County since that date has ranged from 19.7% to 39.5%. There was testimony that fifty grand jury foremen have been selected since 1955. We hold that this evidence is insufficient to establish a prima facie case of racial discrimination under Rose. Bryant v. State, 386 So.2d 237 (Fla. 1980). Even if such evidence were sufficient, the State presented enough evidence to rebut it. The various circuit judges who testified below all denied ever making race a factor in the selection of a grand jury foreman. They cited such factors as leadership qualities, extent of education, and experience of the candidates in making the selection. Such evidence is sufficient to rebut any prima facie case. United States v. Perez-Hernandez, 672 F.2d 1380 (11th Cir.1982); United States v. Holman, 680 F.2d 1340 (11th Cir.1982).
Wiley further contends on appeal that her character was impermissibly placed in issue when the State elicited the fact that she was a "bull dagger"  a lesbian that assumes the male role during sexual intercourse. This contention is without merit. The record undeniably shows that the question of Wiley's sexual preferences came into the trial as part of her own confession. According to Wiley, the victim hurled this invective at her during the quarrel that occurred between them on that fateful evening. This accusation perhaps constitutes an explanation for the flailing received by the victim some moments later. The State's only crime here was to try to explain to the jury exactly what a "bull dagger" is.
*286 Finally, Wiley argues that the trial court erred in substituting the alternate juror for a juror who came in late on the second day of trial. The trial court has broad discretion in removing a juror, and there was no abuse of discretion here. Porter v. State, 388 So.2d 18 (Fla. 4th DCA 1980).
AFFIRMED.
PEARSON, TILLMAN (Ret.), Associate Judge, concurs.
ERVIN, J., specially concurs with opinion.
ERVIN, J., specially concurring.
I have strong doubts that the safeguards recommended in our recent opinion in Brown v. State, 426 So.2d 76 (Fla. 1st DCA 1983), were observed in the instant case. I consider it makes very little difference that a defendant, or indeed any other person, voluntarily consents to the process of hypnosis in determining whether hypnotically-induced-testimony is legally relevant and therefore admissible. Yet, because it appears that the defendant's admissions were not the direct product of the hypnotic session, I am constrained to join in the affirmance.
As stated in the majority's opinion, the first incriminating statement was made approximately two months following the session. I therefore think this substantial length of time attenuates any purported taint attributable to the technique of hypnosis.