495 So.2d 895 (1986)
Jack Stanley TOWNE, Appellant,
v.
STATE of Florida, Appellee.
No. BI-354.
District Court of Appeal of Florida, First District.
October 13, 1986.
*896 Terry P. Lewis, Sp. Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Kurt L. Barch, Asst. Atty. Gen., Tallahassee, for appellee.
JOANOS, Judge.
Appellant Jack Stanley Towne appeals from the denial of his motion to suppress statements and physical evidence. The questions presented for our review are: (1) whether the arrest was lawful, and (2) whether appellant's statements were voluntarily given. We affirm.
Appellant entered pleas of nolo contendere in four cases involving charges of armed burglary, aggravated assault, and sexual battery with a weapon. The pleas were entered with an express reservation of the right to appeal the trial court's denial of the motion to suppress. Appellant and the state stipulated that the issues presented by the suppression motion were dispositive of the cases against him.
On December 4, 1984, at 1:00 a.m., appellant was arrested at an apartment complex which was located next to the apartment complex where he lived. The arresting officer had been dispatched to the Villas Apartments in response to a complaint that a prowler was peeking in windows. The officer observed appellant walk approximately thirty paces, stop next to a window, and then crouch down to look in the window for several seconds. Appellant matched the description the officer had been given of the prowler. The officer's police radio squawked revealing his presence, whereupon appellant hastily left his position at the window. Although appellant did not run as the officer approached, his pace continuously quickened as the officer moved toward him. The officer caught up with appellant at a car. Appellant denied ownership of the car and denied having keys in his hand. When asked to explain his reason for being in the apartment complex, appellant told the officer he had gone to ask a classmate about the time scheduled for an exam. He was unable, however, to give the name or address of the classmate. When appellant pointed in a direction away from the particular building where his classmate purportedly lived, the officer arrested him for loitering and prowling.
Appellant's account of the circumstances of his arrest differs somewhat from that of the officer. Appellant said he left his apartment at 12:30 a.m. to pick up computer printouts at school and he intended to stop by a classmate's apartment to ask when exams were scheduled in the class. He had never been to the apartment before and did not know the classmate's last name, so he had trouble locating her apartment. At some point during his walk through the apartment complex, appellant stooped or crouched down and looked in an open apartment window. Appellant said that after he looked in the window, he noticed a police officer with a walkie-talkie *897 crouched down by a telephone pole. As appellant walked towards his car, the officer approached him. Appellant explained that he did not know his friend's last name and was uncertain about the apartment. He explained that the car he was about to get in was a rental car, and he told the officer he did not have keys in his hand because he had put them in his pocket.
The officer placed appellant under arrest within two minutes or less after he approached him at the car. The officer arrested appellant for loitering and prowling, because the answers appellant gave to his questions were too imprecise and so insufficient to be considered truthful. When asked whether he had made the arrest on the basis of an inarticulable hunch, the officer explained that when he first observed appellant, he immediately thought appellant was the suspect in a rape investigation he had been conducting. The officer then agreed that it was an inarticulable hunch, since he could not explain why he felt as he did.
Appellant was given the Miranda rights, both at the car at the time of the arrest, and again at the police station. Appellant maintains that he asked to see a lawyer, and the arresting officer told him he could have an attorney but if he elected to go that route the officer would "throw the book at him." According to appellant, the officer then told him he recognized that appellant had psychological problems. Appellant said the officer told him he was a "new school" officer, that he was interested in helping appellant with his problems, that he would help appellant obtain release on his own recognizance, and that he would help appellant obtain probation. In addition, appellant maintains the detectives and the arresting officer told him that tape recording his statements would not only assist in a court proceeding, but could be used by a psychiatrist to determine the nature of his stress. Appellant contends he trusted the officers and relied upon their representations.
Again, the officers' version of the events surrounding the circumstances of appellant's incriminating statements differs from that of appellant. The officers note appellant was given his Miranda warnings not once, but several times, and he indicated he understood the rights available to him. The officers contend appellant did not request an attorney, and though the officers acknowledge the arresting officer promised to do everything he could to help, the discussions concerning offers of psychiatric help and promises to do everything possible to help him occurred in the context of the "entire realm of possibilities" attendant upon disposition of the case. According to the officers, these discussions occurred after appellant had made incriminating statements. The officers testified that no promises were given, and note that appellant read and signed a form waiving his right to consult an attorney.
The psychiatrist appointed by the court to evaluate appellant's psychological status testified that at the time appellant talked with the investigators, he was primarily motivated by his desire to get help. The psychiatrist testified further that appellant was peculiarly susceptible to suggestions that psychological counseling could be made available to him. In the psychiatrist's opinion, appellant would not have confessed if he had not been promised psychological help.
The trial court ruled the initial stop and arrest was valid and legal, and that appellant's statements were made freely, knowingly and voluntarily.
Appellant's arrest was predicated upon Section 856.021, Florida Statutes (1983), which provides:
(1) It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.
(2) Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement *898 officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object. Unless flight by the person or other circumstance makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting him to identify himself and explain his presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.
(3) Any person violating the provisions of this section shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
Since loitering and prowling is a misdemeanor, only the officer's own observations will be considered in determining probable cause to arrest. S. 901.15(1), Fla. Stat. (1983); State v. Ecker, 311 So.2d 104 (Fla.), cert. denied, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975); T.L.M. v. State, 371 So.2d 688 (Fla. 1st DCA 1979); Springfield v. State, 481 So.2d 975 (Fla. 4th DCA 1986). Upon observing conduct which the officer considers suspect, he must then "`be able to point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant' a finding that a breach of the peace is imminent or the public safety is threatened." State v. Ecker, 311 So.2d at 109, quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). To justify an arrest pursuant to Section 856.021, proof as to both elements of the statute must be established. B.A.A. v. State, 356 So.2d 304, 306 (Fla. 1978); State v. Ecker, 311 So.2d at 110; Patmore v. State, 383 So.2d 309, 310 (Fla. 2d DCA 1980).
In the instant case, a consideration of appellant's conduct in light of the factors which have been upheld as supporting an arrest for loitering and prowling demonstrates first, that appellant's suspect conduct was observed by the arresting officer; second, appellant matched the description of a reported trespasser; and third, appellant's explanation for his presence at the apartment complex lacked sufficient specificity to assure the arresting officer of its truth. We find that in the circumstances of this case, there was probable cause to arrest.
To be admissible, a confession or incriminating statement must be made voluntarily. Brewer v. State, 386 So.2d 232, 235 (Fla. 1980). The voluntariness of a confession is measured by the fifth amendment privilege against self-incrimination in state prosecutions as in federal. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The appropriate inquiry for a determination of voluntariness was set forth in Bram v. U.S., 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), and provides that:
a confession, in order to be admissible must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises however slight, nor by the exertion of any improper influence... . A confession can never be received by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted.
See also Brewer v. State, 386 So.2d at 235; Hawthorne v. State, 377 So.2d 780, 784 (Fla. 1st DCA 1979); State v. Kettering, 483 So.2d 97, 98 (Fla. 5th DCA 1986). It is the state's burden to prove, by a preponderance of the evidence, that the statement was made voluntarily. Brewer v. State, 386 So.2d at 236; Wiley v. State, 427 So.2d 283 (Fla. 1st DCA 1983); Gaspard v. State, 387 So.2d 1016 (Fla. 1st DCA 1980); State v. Kettering, 483 So.2d at 98.
One aspect of the voluntariness, hence admissibility, of a confession or incriminating *899 statement, is the waiver of the right to assistance of counsel during custodial questioning. The threshold inquiry with regard to waiver is whether the right to counsel was ever invoked. Smith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). If an accused has in fact invoked the right to have counsel present during custodial questioning, then 
a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.
Edwards v. Arizona, 451 U.S. 477, 484, 101 S.Ct. 1880, 1884-1885, 68 L.Ed.2d 378, 386 (1981).
In Cannady v. State, 427 So.2d 723, 729 (Fla. 1983), the court held the stricter standard of Edwards v. Arizona can be overcome by showing that an accused has knowingly and intelligently waived a previous request for counsel when he voluntarily executes a written waiver. Similarly, in Waterhouse v. State, 429 So.2d 301, 305 (Fla.), cert. denied, 464 U.S. 977, 104 S.Ct. 415, 78 L.Ed.2d 352 (1983), the court found Edwards was not applicable "because appellant did not express a desire to deal with the police only through counsel." And in Norris v. State, 429 So.2d 688, 689 (Fla. 1983), the court held that although "[i]nvestigating officers must respond affirmatively to a request for counsel, ... they are not required to try to convince a defendant that he needs an attorney."
We conclude that under the circumstances, the trial court could have concluded that appellant did not request assistance of counsel during interrogation. The transcript of the suppression hearing indicates appellant testified that after he had been transported to the police station, he asked to see a lawyer. Controverting testimony was provided by the officers, who stated unequivocally that although appellant asked the officers if they thought he should have a lawyer  he did not request counsel. Consistent with the officers' assertion is record evidence that appellant telephoned his wife and advised her that he did not get a lawyer because he believed the police were going to help him. Corroborative evidence that appellant did not invoke the right to counsel is the fact that he signed a written waiver of the right to counsel.
The voluntariness issue is more difficult to resolve. It is undisputed that the officers discussed the possibility of treatment at North Florida Evaluation and Treatment Center, and that the arresting officer promised appellant he would do everything he could to make sure appellant received psychiatric help. Nevertheless, the trial court was persuaded that all discussions concerning offers of help were held in the context of the ultimate disposition of the case and after appellant had confessed.
It is well settled that the ruling of the trial court on a motion to suppress comes to the reviewing court clothed with a presumption of correctness and that "the reviewing court will interpret the evidence and reasonable inference derived therefrom in a manner most favorable to sustain the trial court's ruling." McNamara v. State, 357 So.2d 410, 412 (Fla. 1978). We cannot say as a matter of law, that the trial court erred in finding the appellant's statements were made voluntarily.
Therefore, the trial court's ruling on the motion to suppress is affirmed.
ZEHMER, J., and CAWTHON, VICTOR M., Associate Judge, concur.