410 So.2d 201 (1982)
Jean LEON, Appellant,
v.
The STATE of Florida, Appellee.
No. 80-650.
District Court of Appeal of Florida, Third District.
February 23, 1982.
*202 Bennett H. Brummer, Public Defender and Elliot H. Scherker, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Paul Mendelson, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, NESBITT and FERGUSON, JJ.
SCHWARTZ, Judge.
Leon was convicted of kidnapping Louis Gachelin and the possession of a firearm in the commission of that felony. The only point on his appeal which deserves discussion is the claim that his formal confessions should have been suppressed as the product of police threats and physical violence which had admittedly been asserted against him. We do not agree.
The issue arises from a highly unusual sequence of events.[1] For our purposes, it began when Leon arrived at a shopping center parking lot for a prearranged meeting to collect a ransom from Gachelin's brother, Frank. At that time, the victim was being confined at gunpoint in an unknown location by Leon's co-defendant, Frantz Armand. After an inconclusive confrontation, Leon drew a gun on Frank, whereupon the defendant was at once taken into custody by a number of officers who had accompanied Frank to the scene. For the very good reason that Louis' life was in grave danger from Armand if Leon (or the officers) did not return within a short time, the police immediately demanded that the defendant tell them where he was. When he at first refused, he was set upon by several of the officers. They threatened and physically abused him by twisting his arm behind his back and choking him until he revealed where Louis was being held. The officers went to the designated apartment, rescued Louis and arrested Armand.
In the meantime, Leon was taken to the police station. There, he was questioned by detectives who had not been involved in the violence at the scene of his arrest, in the presence of none of the officers who had. After being informed of his rights and signing a Miranda waiver form which stated  as confirmed by the interrogating officers, who themselves employed no improper methods  that he did so understandingly, voluntarily, and "of [his] own free will without any threats or promises,"[2] Leon gave full oral and written confessions to the crime. This process was concluded some five hours after his arrest.
Before trial, the defendant moved to suppress the police-station statements on the ground that they resulted from the allegedly improper police activity which occurred when he was arrested. (The prosecution announced that it would not seek to introduce testimony as to what he was forced to say at that time.) The court denied the motion essentially because the later confessions were given independently of the earlier events. The trial judge held:
The Court is satisfied from having read the [formal] statement that the defendant did understand his rights. The Court is going to deny your motion to suppress. For the record, based upon the evidence before the Court ... the Court will make a finding that based on the evidence before it, it does appear there was force used on the defendant at the time of the *203 making of the initial statement. However, the Court is denying the motion to suppress because it appears to the Court that not only does the defendant understand his rights, but that different officers were involved at the time of the statement. It does not appear that the defendant was under the influence of any duress or threats or promises. The motion to suppress is denied.
The record amply supports this determination. It is well settled that, under appropriate circumstances, the effect of an initial impropriety, even a coercive one, in securing a confession may be removed by intervening events, with the result that a subsequent statement is rendered "free of the primary taint" and thus admissible into evidence as the expression of a free and voluntary act. E.g., Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944); State v. Oyarzo, 274 So.2d 519 (Fla. 1973); State v. Shular, 400 So.2d 781 (Fla. 3d DCA 1981). We hold that the trial judge properly found that the threats and violence which took place at the scene of the arrest did not constitutionally infect the later confessions and that this rule is therefore applicable here.
In reaching this conclusion, we have considered the effect of numerous factors. Among the most important is that the force and threats asserted upon Leon in the parking lot were understandably motivated by the immediate necessity to find the victim and save his life. Unlike the situation in every authority cited by the defendant, and while it may have had that collateral effect, see note 5, infra, the violence was not inflicted in order to secure a confession or provide other evidence to establish the defendant's guilt. Compare, Brewer v. State, 386 So.2d 232 (Fla. 1980); Porter v. State, 410 So.2d 164 (Fla. 3d DCA 1981). Several decisions  and none which hold otherwise have been cited or discovered  have determined that a confession is not invalidated merely because persons other than those who obtained it have, for their own reasons, previously inflicted even unjustified force upon the defendant.[3]Brown v. State, 53 Ala.App. 674, 304 So.2d 17, 25 (1974), cert. denied, 293 Ala. 746, 304 So.2d 27 (1974) (deputy sheriff slapped defendant after being attacked in course of questioning; confession taken shortly thereafter by officer of different agency admissible upon finding it was freely and voluntarily made); State v. Lea, 228 La. 724, 84 So.2d 169, 172 (1955), cert. denied, 350 U.S. 1007, 76 S.Ct. 655, 100 L.Ed. 869 (1956) (striking of defendant by civilian while in custody of officers did not influence subsequent confession); State v. Scarberry, 114 Ohio App. 85, 180 N.E.2d 631, 637 (1961) (striking of defendant by "disgusted" arresting officer while leading him to interrogation room did not invalidate confession properly taken there by detectives and formalized more than three hours later); Berry v. State, 582 S.W.2d 463 (Tex. Crim. App. 1979) (threats of arresting officer and slap by security guard at scene of arrest not conditioned upon or related to "any effort to obtain or force a confession;" statement obtained at police station by other officers hour and half after arrest properly admitted by trial court); Brooks v. State, 130 Tex.Cr.R. 561, 95 S.W.2d 136 (1936) (sheriff knocked down and kicked defendant at scene of homicide because he called him a liar; force unrelated to confession properly secured by district attorney the following day); see also, State v. Rini, 151 La. 163, 91 So. 664 (1922).
Although the rationale has not previously been spelled out, the fact that any coercion was not employed to get a confession is highly significant, as evidenced by its being a characteristic common to each of these cases, in terms of the basic issue with *204 which the "taint" decisions are all concerned: whether the ultimate confession is a product of or is caused by the force, or by an exercise of the defendant's own will. Brewer v. State, supra. When it appears  and it is known to the defendant  that the force is unrelated to whether he confesses or not, it is impossible, on the face of it, to say that a later statement has been caused by the effect of that coercion or fear of its repetition.[4] This observation applies with particular force to the present case. It must have been obvious to Leon that the arresting officers attacked him only to learn the victim's whereabouts, and that his revelation of that location entirely satisfied their wishes. Thereafter, there was no basis to believe that any force would be used for any other reason  specifically, to secure a confession. Indeed, this is therefore the perhaps unique case in which, by its cathartic effect, the very making of the defendant's initial utterance[5] was itself an important factor in dissipating the effect of the coercive influence which produced it. Because he had already told the police what they wanted to know, and the reason the force was asserted had therefore vanished, the effect of the violence may be deemed to have entirely passed when Leon gave the confessions now in question.
The elimination of any causative effect of the coercion is shown also by the more commonly discussed elements that a complete set of Miranda warnings was meticulously given, understood, and waived before the subsequent statements;[6] that over five hours transpired between the violence and the formalization of those statements; and that the confessions were secured by entirely different officers than those who employed the coercive tactics. See cases cited supra, at p. 4. In these latter respects, this case is significantly unlike Brewer v. State, supra, upon which the defendant primarily relies. There, the taking of an improperly induced confession was interrupted only by a fifteen minute appearance before a magistrate, after which the defendant returned to further interrogation by the same policemen. Instead, the situation is controlled by Lyons v. Oklahoma, supra, which is discussed in Brewer as follows:
In Lyons v. Oklahoma, an initial confession was improperly obtained by coercion. A second confession was held to be freely given and admissible. In addition to an intervening warning of constitutional rights, the following circumstances, in contrast to the instant case, were present: twelve hours elapsed from the time of the first statement to the time of the second; the second statement was given in response to questioning by an authority different from the one that exerted the improper influence; and the persons who applied the coercion were not present at the time of the second statement.
386 So.2d at 236. For these reasons, we find no basis to disturb the trial judge's conclusion that, considering the totality of the circumstances, the challenged confessions were freely and voluntarily made. Stone v. State, 378 So.2d 765 (Fla. 1979), cert. denied, 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980); Gaspard v. State, 387 So.2d 1016 (Fla. 1st DCA 1980).
Since the defendant's other points present no error, the judgment below is
Affirmed.
FERGUSON, Judge (dissenting).
The defendant and victim are not strangers to each other. The scenario is a clumsy *205 plot hatched by co-defendant Armand[1] in an attempt to recover by criminal means a sum of money lost to Gachelin in a voodoo flim-flam.
Leon describes himself as a man of slight build. He is Haitian-born and speaks French-Creole and Spanish. He is able to communicate in English haltingly as suggested by the confession which was taken without the use of an interpreter. At the hearing on the motion to suppress, he testified through an interpreter.
The following facts are uncontradicted in the record:
At the scene of the arrest, defendant was pounced upon by several police officers and physically abused by at least two  Detectives Gergen and Derringer  until the whereabouts of the victim had been forcibly extracted. He was told that he would be killed if he did not tell Gachelin's whereabouts. Leon was then taken to a room in headquarters of the Public Safety Department by some of the same officers who participated in his apprehension, where he remained for approximately two (2) hours before giving a "confession." The officer who had custody of the defendant and took his statement was Sergeant Jackson, one of the police officers who was present at the scene of the arrest. The statement is witnessed by Detective LeClair an officer who was present at the scene, who had custody of Leon when he left the scene, and who was "in and out" of the room as defendant gave his statement. Several other investigators were also present at police headquarters and it is clear from the record that at least another one of them was also present at, or took part in, the initial arrest.
Though contradicted by Sergeant Jackson, and unnecessary to this dissent, the defendant testified that after he was apprehended Sergeant Jackson was the first officer to strike him in an attempt to learn the whereabouts of Gachelin. He also testified that Sergeant Jackson forced him, under continuing threats to kill him, to sign the waiver document and give a statement.
Three witnesses testified on the motion to suppress  Sergeant Jackson, Detective Ward and the defendant Leon. On the question whether officers who took part in the apprehension of Leon had any further participation in this custody and questioning at police headquarters the following testimony is relevant:
Testimony of Sergeant Jackson  page 101:
Q. [by prosecutor] now, at the shopping center  I am going back now to where the defendant was apprehended. What officers were out there making that apprehension? (emphasis supplied)
A. Myself, Detective LeClaire, Detective Ward, Detective Beline, Detective Derringer, Detective Gergen, Lieutenant Willis. There were several from the VIN unit from our central district. Their names, I don't know right off-hand. (emphasis supplied)
* * * * * *
Q. In whose custody and control, if you know. [sic] Was he in from the time of the original apprehension was made, during the course of the two hours until you sat down with him across the street in the room?
A. For a portion of the time, he was in my custody or I was with him.
Q. That's what I mean.
A. And then there were portions of time he was in the custody of other detectives.
Q. What other detectives? Do you know?
A. I don't know. I believe Detective Beline may have said at one point, had custody of him along with another officer. (emphasis supplied).
cross examination:
Q. Detective Jackson, isn't it true that Mr. Leon was in other people's custody when he was first apprehended? He was in other detectives' custody, Gergen and Derringer, when he was first apprehended?

*206 A. I don't know who it is; he was in the custody of other investigators, yes sir, cross examination:
Q. Did he [Leon] eventually leave that scene?
A. Yes, sir. We all left the scene.
Q. With whom? Who did he leave with?
A. I believe it was Detective LeClair and Detective McHugh. (emphasis supplied).
* * * * * *
Q. Detective Ward, so we can clarify your involvement in this, you didn't physically apprehend Mr. Leon, did you?
A. No, sir, I did not.
Q. That was Gergen and Derringer who apprehended Him?
A. Detective McHugh also. (emphasis supplied).
Q. They are not here today, are they?
A. No, sir.
Q. Okay. Now, approximately how long after they apprehended Mr. Leon did you see Mr. Leon?
A. Moments.
* * * * * *
Q. But Mr. Leon had already told the investigators where Mr. Gachelin was when you got there?
* * * * * *
A. Like I said before, the conversation was going on. In fact, in detail, where he was located. Where we could locate him, Mr. Gachelin that is. The investigators were speaking to Mr. Leon and asking him, you know, where Mr. Gachelin was located at, and he was replying answers to the questions.
For the first time in history, and the majority concedes as much, there is articulated a distinction between violent police conduct, the purpose of which is to gain information which might save a life, and such conduct employed for the purpose of obtaining evidence to be used in a court of law. The majority holds that where the illegal conduct is motivated by the first consideration no coercive taint will attach so as to render inadmissible evidence subsequently obtained for the purpose of securing a conviction. In essence, evidence of the whereabouts of a victim may be obtained using "rack and pinion" techniques if the officer on the scene determines the situation life-threatening, and after the information sought has been extracted the status is "deemed" as if the illegality had never occurred  an eerie proposition which should be rejected outright for all too obvious reasons. This rationale would dispose of the requirement imposed upon the State to show that an accused, at the time of giving a subsequent confession, was free from external pressures associated with an earlier illegality.
Consistent with the law as it has been for quite some time, the issues are simply (1) whether the initial illegal acts of police agents were sufficiently attenuated by changed circumstances other than passage of time so as to render the confession admissible, Brewer v. State, 386 So.2d 232 (Fla. 1980), and (2) whether the defendant with a full knowledge of his legal rights, knowingly and voluntarily waived them. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The initial police conduct in this case was unlawful and should not be condoned by this court using any rationale.
When a confession challenged as involuntary is sought to be used against a criminal defendant at trial, the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary and intelligent. Lego v. Twoney, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). The State's responsibility in this case was to show that (1) physical abuse and threats were not an operative factor in causing or bringing about the confession obtained herein, and (2) the defendant fully understood his legal rights and knowingly and voluntarily waived them.
The circumstances here during and following the arrest were oppressive. There was no break in the stream of events following the initial physical abuse, the taking into custody, and the confession. Brewer v. State, supra. The facts in this case are *207 unlike those in Lyons v. Oklahoma, supra, which is discussed in the Brewer case. After this defendant was arrested he was taken from the scene to other locations and not transported to police headquarters for more than one hour. Approximately two hours after arrival at the station he had signed a written waiver of his constitutional rights. Contrary to the trial court's finding, defendant, for the entire period beginning with the violent apprehension to the confession, was continually in custody of the same authority and the same officers who were present at the scene of the apprehension, some of whom had taken an active part in it. No reweighing of the evidence is necessary to reach the conclusion that the state failed in its burden of showing by a preponderance of the evidence that defendant voluntarily and intelligently waived his constitutional rights. The confession should have been suppressed.
NOTES
[1] We adopt the version of the record most favorable to the order denying the motion to suppress. State v. Nova, 361 So.2d 411 (Fla. 1978).
[2] At the hearing on his motion to suppress, the defendant contrarily stated that he had spoken to the detectives only "because I was scared, because they [the arresting officers] told me they would kill me." While this testimony may be disregarded in the face of the contrary evidence, see note 1, supra, it is noteworthy that Leon never suggested that he was influenced by a concern that he had already irretrievably incriminated himself by the first statement that he knew where the victim was. Hence, we do not consider, and it is not argued, that the so-called "cat out of the bag" analysis of the admissibility of subsequent confessions is applicable or helpful in resolving the present case. Cf. United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947); Darwin v. Connecticut, 391 U.S. 346, 350, 88 S.Ct. 1488, 1490, 20 L.Ed.2d 630, 634 (1968) (Harlan, J., concurring in part and dissenting in part).
[3] With the exception of Brown v. State, in which an officer struck the defendant in apparent self-defense, the force involved in each of these cases was clearly indefensible by any standard. Since this is the rule, and the question is therefore irrelevant to our inquiry, we do not attempt to resolve the moral and philosophical problem of whether the force used on Leon in the emergency, life-threatening situation presented to the arresting officers was "justified" or "proper."
[4] On the other hand, if the force causes some lingering and disabling physical or psychological effect, a confession given under that influence would likely not be admissible, no matter what motivated the coercion. There was no such evidence, however, in this case.
[5] Although Leon's disclosure of his knowledge of the victim's whereabouts was certainly incriminating and thus admissible if not secured by force, it can, under the circumstances, hardly be termed a "confession" or "statement" in the usual sense of those terms.
[6] See, Wimberly v. State, 393 So.2d 37 (Fla.3d DCA 1981); see also, Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).
[1] We affirmed Armand's conviction and sentence in Case No. 80-1975, opinion filed January 26, 1982.