**Jean LEON, # 072574,**
**Petitioner-Appellant,**

**v.**

**Louie L. WAINWRIGHT, Secretary, Dept. of Corrections, State of Florida, William French Smith, Attorney General, Respondents-Appellees.**

No. 83–5609.

United States Court of Appeals,
Eleventh Circuit.

June 18, 1984.

Bennett H. Brummer, Public Defender, Elliot H. Scherker, Asst. Public Defender, 11th Judicial Circuit, Miami, Fla., for petitioner-appellant.

Paul Mendelson, Asst. Atty. Gen., Michael Neimand, Miami, Fla., for respondent-appellee.

Before FAY and ANDERSON, Circuit Judges, and MARKEY *, Chief Judge of the Federal Circuit.

FAY, Circuit Judge:

Jean Leon was convicted of kidnapping and possession of a firearm during commission of a felony. He was sentenced to fifteen years of incarceration. After exhausting his state remedies Leon filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 (1980). The district judge denied the petition. The only issue on appeal is whether Leon's post-arrest confession should have been suppressed as the product of earlier police threats and physical violence. We find the trial judge properly admitted the post-arrest statement. The facts in this case clearly indi-

cate a break in the stream of events which dissipated the coercion surrounding the first statement and made the second confession voluntary. We affirm the district court's denial of relief.

FACTS

Louis Gachelin, a Miami cabdriver, picked up two passengers, Jean Leon and Frantz Armand, at the Miami International Airport and drove them to an apartment complex. Upon their arrival at the complex, the passengers requested that the driver carry their suitcases inside the building. As the driver approached the door of the apartment, he was forced at gunpoint to enter the apartment and remain quiet. They undressed and bound him. Leon and Armand then began making numerous phone calls to the driver's family attempting to arrange a ransom. As soon as they received the first phone call, the Gachelin family contacted the police. Frank Gachelin, the cabdriver's brother, who was working with the police, agreed to meet Leon at the Northside Shopping Center and to bring $4,000 in exchange for his brother's release.

Leon and Frank Gachelin met in the shopping center parking lot at 2:00 a.m. During the confrontation Leon drew a gun on Frank. The police officers, who had accompanied Frank to the meeting, immediately arrested Leon and demanded that he tell them where he was holding Gachelin. When he refused to tell them the location, "he was set upon by several of the officers." *Leon v. State*, 410 So.2d 201, 202 (Fla.3d DCA 1982). "They threatened and physically abused him by twisting his arm behind his back and choking him until he revealed where Louis [Gachelin] was being held." *Id.* The officers went to the apartment, rescued Gachelin and arrested Armand.

Meanwhile, Leon was taken to the police station. He was questioned there by detectives who had neither been involved in the

* Honorable Howard T. Markey, Chief Judge, U.S. Court of Appeals for the Federal Circuit, sitting by designation.

threats and use of force at the scene of his arrest nor witnessed it. After being thoroughly informed of his rights and signing a *Miranda* waiver form, he gave full oral and written confessions of the crime. This entire process was concluded about five hours after his arrest.

Leon was charged with kidnapping, robbery, aggravated battery, and possession of a firearm during commission of a felony. After a jury trial he was convicted of kidnapping and possession of a firearm during commission of a felony and was acquitted of the other charges. He was sentenced to fifteen years of incarceration. The Third District Court of Appeal affirmed the judgment. *Leon v. State*, 410 So.2d 201 (Fla.3d DCA 1982). The Supreme Court of Florida denied *certiorari* and Leon then filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1980). The district judge denied the petition. Leon asserts that the district judge erred in denying his petition because his due process rights were violated by the admission into evidence of his post-arrest statement which was a product of a prior, physically-coerced and inadmissible statement. We do not agree.

## VOLUNTARINESS OF CONFESSION

 The Due Process clause of the Fourteenth Amendment prohibits prosecutorial use of an involuntary confession. *Brooks v. Florida*, 389 U.S. 413, 415, 88 S.Ct. 541, 542, 19 L.Ed.2d 643 (1967); *Chambers v. Florida*, 309 U.S. 227, 238, 60 S.Ct. 472, 477, 84 L.Ed. 716 (1940); *Brown v. Mississippi*, 297 U.S. 278, 286, 56 S.Ct. 461, 465, 80 L.Ed. 682 (1936). The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's "free and rational" choice. *Martinez v. Estelle*, 612 F.2d 173, 177 (5th Cir.1980),[1] *citing, Greenwald v. Wisconsin*, 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20

L.Ed.2d 77, 79 (1968). This means that it "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence...." *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897).

This case involves the voluntariness of two different confessions. Leon made his first statement at the time of his arrest in the shopping center parking lot when the police threatened and physically abused him.[2] He was then taken to the police station. After being informed of his *Miranda* rights and signing a waiver, he gave a second statement to the police. He asserts that this police-station statement was involuntary, and therefore inadmissible, because it was a direct result of the improper police activity at the time of his arrest.

The United States Supreme Court has never held that an early inadmissible statement automatically precludes the admission into evidence of later voluntary statements. *United States v. Bayer*, 331 U.S. 532, 541, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1947). Instead it has established that in cases involving multiple confessions courts may hold some of the confessions involuntary and others not only if such a distinction is justified by a sufficiently isolating break in the stream of events. *See, e.g., United States v. Bayer*, 331 U.S. at 540, 67 S.Ct. at 1398, 91 L.Ed. 1654 (holding valid second confession made under notably different circumstances six months after first confession which violated *McNabb* rule); *Lyons v. Oklahoma*, 322 U.S. 596, 604, 64 S.Ct. 1208, 1213, 88 L.Ed. 1481 (1944) (holding valid second confession made in new, noncoercive environment to different questioners, a half day after first admittedly involuntary confession). We must therefore determine whether, under the circumstances present in this case, it can be found

---

**1.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding upon this court unless and until they are overruled by the Eleventh Circuit sitting *en banc*. *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

**2.** The prosecution never attempted to introduce this statement since it clearly was the result of police threats and physical force.

that the coercion surrounding the first statement had been sufficiently dissipated so as to make the second statement voluntary. *See, e.g., Darwin v. Connecticut,* 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968); *Leyra v. Denno,* 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1953).

In *Lyons v. Oklahoma,* 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944), an initial confession was improperly obtained by coercion. The trial court admitted into evidence a second confession given on the same day. The Supreme Court found no violation of petitioner's due process rights because the circumstances in the case indicated a break in the stream of events which allowed a finding that the second confession was voluntary. These factors led the Court to its conclusion: twelve hours had elapsed between the two statements;[3] an intervening warning of constitutional rights was given by the officers; different individuals had carried out the second questioning; and the persons who had applied the initial coercion were not present at the second questioning. The Court concluded that, considering the totality of the circumstances, there was sufficient support to conclude the challenged confession was freely and voluntarily made.

The totality of the circumstances in this case clearly confirms the finding that the second statement was voluntary.[4] The police, motivated by the immediate necessity of finding the victim and saving his life, used force and threats on Leon in the parking lot.[5] Hours later, Leon was questioned at the police station by a completely differ-

ent group of police officers. These officers were not even participants in the surveillance team at the parking lot. Prior to questioning him the officers meticulously explained to him his constitutional rights. He specifically waived his right to have counsel present. The necessity of saving the victim's life, the different physical setting, the different group of questioning officers, and the meticulous explanation to appellant of his constitutional rights constituted a sufficient break in the stream of events to dissipate the effects of the first coercion. The challenged confession was properly admitted into evidence.

We do not by our decision sanction the use of force and coercion by police officers. Yet this case does not represent the typical case of unjustified force.[6] We did not have an act of brutal law enforcement agents trying to obtain a confession in total disregard of the law. This was instead a group of concerned officers acting in a reasonable manner to obtain information they needed in order to protect another individual from bodily harm or death. This record provides overwhelming evidence to support the conclusion that appellant understood his rights, had a clear and free mind not dominated by the earlier physical abuse and voluntarily made his confession to the police.

AFFIRMED.

---

**3.** Counsel for appellant urges that only 2 hours elapsed between the first (coerced) confession and the second. Whether the time period was 2, 2½, 3 or 5 hours is not controlling. The question is whether a totality of the circumstances, including a time interval when one exists, will support a finding that there has been a break in the stream of events between the two statements.

**4.** Under Florida law the question of the voluntariness of the second statement was submitted to both the trial judge and the petit jury. The trial judge denied petitioner's motion to suppress before the trial and when it was renewed during the trial. At the request of the petitioner

the same question was submitted to the jury with appropriate instructions.

**5.** Unlike most cases involving coercion to obtain confessions the police's motive in this case was totally different. The violence was not inflicted to obtain a confession or provide other evidence to establish appellant's guilt. Instead it was motivated by the immediate necessity to find the victim and save his life. *Leon v. State,* 410 So.2d at 203.

**6.** The Third District Court of Appeal characterizes this case as involving "a highly unusual sequence of events." *Leon v. State,* 410 So.2d at 202.